Our next case for argument today is United States v. Johnson, 24-2027. Okay, Ms. Eisenman, whenever you're ready. May it please the court, Vanessa Eisenman for Artez Johnson. The District Court erred in admitting Traylor's highly prejudicial other acts evidence under Rule 404B because Johnson did not actually dispute intent at trial. As an initial matter, the District Court unambiguously employed the wrong legal standard when it analyzed the government's pretrial 404B motion to admit this evidence. The government used the correct standard in its motion, but the court, for reasons unknown, went back to the four-factor test that predated Gomez, which was this court's en banc decision, saying essentially that that four-factor test should be abandoned, that it was no longer useful, because it led to too many automatic admissions. So that was the first problem here, and that led to the court, in its analysis, which starts at Appendix 8 in our opening brief, not really realizing what was at stake here. And that's some of the things that this court in Miller and then Gomez really touched on, which is that you have to use special caution with intent evidence, and you really need to be careful about it. But one of the things, how much is meth going for in this community? I'm trying to recall the trial testimony. I believe at the end they were saying, you know, it was what Traylor testified to was like maybe two pounds. It was like $3,300, maybe. The government can correct me if I'm wrong. Okay. The idea that 331 grams was for personal use was implausible. I completely agree with that. But that was his defense up until trial, right? That was his pretrial brief, yes, that he had filed. And that was what was in front of the judge when he was dealing with the government's motion in limine, right? That's true. Okay. When did it become clear that the defendant was not pursuing that any longer? Yeah, at trial. When exactly at trial? In opening statements, in the cross-examination of the first police officers before Traylor testified, that was clear. And that was the court's duty to reevaluate that because this court has said over and over again it's not what matters. Pretrial, it's a motion in limine. It's a preliminary ruling. Right, it's not final. Right. And so what did the defense do to ask the judge to reconsider in light of the changed defense strategy? Didn't do that. And we conceded that in our brief, that they didn't bring it up again. But as this court said in Morgan, that just means if we're looking at that ruling and not looking at the fact that the judge had the absolute wrong legal standard even pretrial, if we're just looking at that, that at most means we're under plain error standards. What was the point of Mr. Johnson's aunt's testimony? She testified that he had been a drug user. A drug user and never sold drugs. Yes. I mean. First of all, that testimony came well after Traylor's testimony. So if you want to look at that, then let's look at the defense's testimony. So your point is the district judge should have just, I guess, I mean, before the defendant put on any defense, just guessed that that was not going to be his defense? No. That he was not going to make an intent? No. So how should the judge. That's not at all what I'm saying. All right. So the motion. Government makes its motion to eliminate. The judge grants the motion to eliminate and permits the testimony. With legal error. Yes. Okay. Well, let's hold off on that for a second. Then we have opening statement. Right. And then the government puts on his case in chief. And when during that process, before Traylor's testimony, the defendants say, Judge, this testimony is irrelevant because X. As I just said to Judge Hamilton, the defense counsel did not say that. So what is the judge supposed to do? If I can answer that.  It would be after those two detectives testified, Traylor was going to be brought up. Everybody, it was clear that Traylor's testimony was all about 404B. Right? That's what the government raised pretrial. That's the entire purpose of the motion. That's why it's important that there was legal error here. Because Gomez says it's the judge's duty to have special concern with this. It's the judge's duty to reevaluate this based on the evidence. That's exactly what the court did. Wait. No, let me ask you a question. What would defense counsel's reaction be at trial if the judge said, Defense counsel, we're in the middle of the government's presentation. You come up here right now and you tell me exactly what your defense theory is going to be. Because I have to decide whether to admit this 404B evidence. No. It's exactly. No. What the court did in Miller is exactly what this court should have done here. And that was, okay, we're going to have this 404B testimony. I have listened to the opening and I have listened to cross-examination of the two witnesses. I do not find that intent is squarely at issue, which is what I need to find to admit this evidence, which the general rule is, does not come in. So this cannot come in at this time. Government, continue with your case. This trailer testimony can be rebuttal evidence if it does become clear that intent is put at issue. But at this point, intent has not been disputed. Therefore, this is highly prejudicial evidence that needs to be excluded. Let me ask you about this train of thought. I get that Mr. Johnson ultimately was not going to dispute intent. He was going to make it about I didn't possess it, the other passenger did. Does that mean intent is not at issue when the government still needs to prove intent to the jury to prove its case beyond a reasonable doubt? What would be wrong with that line of thinking? That's exactly what the court took up in Miller and in Gomez. And it said that part of the problem with this four-factor test was that there was too much of this language that intent is automatically at issue, especially with specific intent crimes. And they said if you read that, you know, take that language to its extent, it means that any time the government has to prove intent, you can get any 404B evidence in that you want as long as you say intent. And the court in Miller and then in Gomez said that that's not enough because that would swallow the entire 404B prohibition against this type of evidence. And said that in order for it to be there, it has to be something more than just the government having its burden of proof. If it were enough for the defendant just to say I'm putting the government to its burden of proof, it's a clear statement in Gomez that that is not enough to allow the 404B evidence because that would swallow the entire rule. Rather, if you look at cases like Chapman and Miller, it has to be clear that that's what the defendant is disputing. And if it's not clear, that evidence does not get to come in. Ms. Eisenman, would you agree that if the defendant had persisted, for example, in opening statements in denying intent to distribute, claiming only personal use, that this would be evidence the district judge could exercise his discretion properly to allow? Yes. Okay, then the problem that I have is, in essence, presented by the plain error standard of review here. And I'm echoing what Judge Kirsch was asking about. What's the district judge supposed to do when the defense has made very clear before trial, this is going to be our theory? The intent is going to be at issue? And when there is no explicit change of direction from the defense? I understand that, and that's why we're under the plain error standard. But you can just look at what this court said in Morgan. In Morgan, there wasn't even an objection to the pretrial 404B motion. And this court still looked at it under plain error and said, what we're looking at is not, you know, we're not looking at the trial judge per se. We're looking at, was this a plain error that affected his rights? And what we're looking at in terms of whether it's a plain error, is it clear that this evidence should have been excluded? And I argue under Miller and Chapman, those cases made it clear that if intent is not at issue, this evidence should have been excluded or at least should have been sidelined. That's correct. And not affecting his substantial rights. But, please listen, I agree with your general statement of law. The problem is, how does the judge know whether the issues have changed when the defense doesn't tell him? Because he's listened to the opening statements. He's listened to the cross-examination. And he hasn't heard intent. He hasn't heard personal use. He has heard cross-examination regarding forensics, regarding whether there was DNA evidence that Mr. Johnson had ever touched the bag. That's not consistent. The defendant doesn't even have to give an opening statement. I mean, what you're suggesting is the judge has to listen and parse the defendant's opening statement and pull out the defendant's theory. The defendant could say, I'm not going to give an opening statement. The defendant doesn't have to conduct cross-examination. The government has to prove its case. The burden that you want us to put on the district judge is overwhelming. I disagree. I know you do. This was a 404B issue that was raised pretrial. Everybody knew that this witness, the sole purpose of this witness, was to give 404B evidence, which is disfavored. It's the government's burden to prove that there's some non-propensity reason to have that. Correct. But you just agreed with me a few minutes ago that as long as the personal use defense was on the table, this could properly be admitted. If he was arguing intent and not arguing possession, or just if he was arguing intent that there was no intent, then we're under Morgan. And then I concede that this case is not the same. But we're not there. He wasn't arguing intent. I did even a Control-F on the transcript. It's nowhere that the defense counsel is arguing intent and is arguing personal use. He's arguing that he was on drugs at the time, so you couldn't take his admission seriously, and there was no evidence that he ever touched these bags. That is not an intent defense. I'm sorry. I'm over my time. All right. Thank you, Ms. Deisman. Mr. Kenestra. May it please the Court. Good morning, Your Honors. Jeff Kenestra on behalf of the United States. The district court didn't abuse its discretion in admitting the evidence in question, and the defendant can't overcome the standard of review given his failure to raise his appellate arguments in the district court. Now, as to Rule 404B itself, the defendant doesn't even dispute on appeal that the evidence in question is relevant to intent through a propensity-free chain of reasoning. His argument is only that the intent itself is not relevant. And when it comes to Rule 404B, that's incorrect as a matter of law. What determines relevance is the indictment. The indictment establishes the offenses and the elements of those offenses. The intent to distribute is an element and, therefore, evidence that, in fact, establishes intent through a propensity-free chain of reasoning is relevant and passes through Rule 404B, which then, of course, brings us to Rule 403, which I think is where most of the discussion was this morning. And that is where it properly comes into play whether the non-propensity purpose is, in fact, in dispute. Now, intent was, in fact, in dispute, and it was challenged at every stage of this case, including in the matters that were before the district court when it ruled on the order in limine and at trial itself. Now, there were three things before the court when it ruled on the motion in limine. Those were the defendant's interview in which he told officers that the drugs were his but he intended to use them. Second was the defendant's trial brief where he again said his defense was that the drugs were possessed for personal use. And then third is that in response to the government's motion, which asserted that the intent would be the key and perhaps only disputed issue at trial, the defendant said nothing in response. And so, in fact, the district court noted on page 4 of its order that the defendant didn't dispute or deny that intent was a central issue in the case. So given that that was what was before the district court when it ruled, the district court was perfectly within its discretion to proceed on that understanding, and nothing happened at trial that should have alerted the district court to anything else because nothing was different at trial. Now, beginning on the morning of trial, the same day that this witness testified, the defendant submitted to the district court a jury instruction on the lesser-included offense of intent of simple possession. Now, the only difference between that and the charge defense is the element of intent to distribute. So again, on the very morning of trial, the same day this witness testified, the defendant is again clearly conveying to the district court intent is at issue. The 404B evidence was raised multiple times that morning, including before jury selection, again before openings. The government said it was going to refer to this evidence. Defense counsel agreed that he had no objection to the limiting instruction and agreed to request that instruction when he wanted it to be given. During the defendant's opening statement, he told the jury, you are going to hear evidence from this cooperating witness. You're going to hear that person's testimony. You're going to hear that that person is facing their own legal issues. The defendant didn't use magic words. He didn't say intent, but he said the jury was going to hear that the defendant himself was a heavy user of drugs. He had a severe addiction. He also said the defendant was going to testify, but didn't say what that testimony was going to be naturally. During the defendant's cross-examination of the government's witnesses, he did elicit testimony about intent. He elicited testimony that there were not signs of drug dealing in the defendant's car, other than the methamphetamine itself, but that there were signs of drug use in the car. Specifically, that there were not large amounts of money, scales, packaging materials, cutting agents, things of those sorts, but there was a syringe as well as Narcan in the car, all of which supported the defendant's claim in his own interview, his recorded interview, which the jury heard that he was going to use this large amount of drugs and that he was capable of doing so. During the defendant's case in chief, he called his aunt, the sole purpose of which was to say that he was a heavy user of drugs, but was not a dealer. And perhaps most notably, during the defendant's own testimony, he again admitted possession. Now, he attempted to walk back the quantity, but he still admitted to possessing a portion of the drugs. So if intent truly weren't at issue, then there would have been nothing left for defense counsel to do during closing arguments, except to say that the jury should find the defendant guilty of possession with intent to distribute, but perhaps find that the quantity was less than 50 grams. And that's certainly not what counsel did. That would have been a short-sighted strategy because it would have guaranteed a conviction. The defendant still would have been a career offender, would have been facing a very significant sentence. And so really, intent was at issue throughout the proceedings, both when the district court ruled on the order in limine, as well as at trial, even if the defendant didn't say any magic words. And really, in a case like this, where the offense is possession with intent to distribute, the defendant in an interview after his arrest has admitted possession but denied intent to distribute, intent is always going to be at issue. You just walked us through trial. Let's get to the closing argument, the government's closing argument. Sure. And now I'm going to your argument about we've got a propensity-free chain of reasoning here that should calm any fears that we might have. The government said Traylor is like a defendant, the defendant, in the sense that they're users and distributors. And honestly, the defendant probably likely did what Traylor did when he bought methamphetamine. He would buy and sell, but in his words, it was his opportunity to use for free. How is that not a propensity argument? So that's addressing two things. The first is addressing the defendant's own testimony that he was only using and not dealing as well. So Traylor, as well as the expert witness, talked about how it's very common for meth dealers to use as well, that by selling methamphetamine and using some of it, essentially that allows them to use it for free. And the second thing is it addresses the credibility of Traylor's testimony. Of course, Traylor was subjected to vigorous cross-examination about his motives, about the lack of corroboration. And so the government was establishing how Traylor's testimony about the nature of his drug dealing and his drug use was consistent with the evidence here. That Traylor was, just as the expert testified, the drugs that Traylor distributed were consistent with that of a mid-level dealer. And that's exactly what Traylor testified. He said he bought the methamphetamine from the defendant, he would use some of it, and then distribute the rest. So the government did not argue a propensity inference to the jury. It was arguing about Traylor's testimony, which was, of course, a focus of the defense closing. It occupied multiple pages of the defense closing, saying that this is not a person who should be believed, that there's no corroboration, things along those lines. So that was an appropriate argument by the government. I'd be happy to answer any further questions if your honors have any. Otherwise, the government would ask this court to affirm. Thank you. Okay, Ms. Eisenman, you are out of time, but would you like a minute for rebuttal, if you have anything yet?  I hope I can take less than that. Cross-examination regarding drug dealing materials, that's totally consistent, not only with – it could be consistent with a defense of lack of intent, but it also could be consistent with a defense of lack of possession. If these 300 grams of meth aren't yours, you're not going to be running around with a bunch of other drug dealing materials, scales and the like. Admitted possession, he did not admit anything regarding the charge conduct. So that was not an admitted possession regarding the actual element of the offense. Not even saying, I was going to get some of the methamphetamine for driving? Mm-hmm. He said he was going to get a portion of it, a small portion of it, because he gave Mr. Duckworth, this passenger, a ride, but the rest belonged to him. So in no way was that an admission that he had possessed the entire amount of drugs. And then finally, just back to Judge Jackson Aquini's point about the government in closing, that definitely was a propensity argument, as we argued in both of our briefs. Also, the government right thereafter, there was a jury note saying that one of the jurors had recognized the passenger, I believe it was, and said there was a discussion about that. But in that discussion, the government admitted that the defense's entire argument was lack of possession. So that just shows that the government was aware that this was the defense, although that's at a later time than Traylor's testimony. So thank you for the extra minute. Sure. Thank you, Ms. Eisenman. Thank you, Mr. Kinesh, for the testimony taken under advisement.